IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 14-70427 |
| AZIZ CONVENIENCE STORES, L.L.C., | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTOR'S EMERGENCY MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a); 363, AND 365, AND BANKRUPTCY RULES 2002, 6004, AND 6006 FOR ENTRY OF: (I) AN ORDER: (A) APPROVING AUCTION AND BIDDING PROCEDURES; (B) SCHEDULING AUCTION AND SALE HEARING; (C) APPROVING THE FORM AND MANNER OF SERVICE OF NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (E) GRANTING RELATED RELIEF; AND (II) AN ORDER: (A) APPROVING PURCHASE AGREEMENT; (B) AUTHORIZING SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (C) APPROVING FORM AND MANNER OF SERVICE OF NOTICE OF SALE HEARING; AND (D) GRANTING RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**THERE WILL BE A HEARING ON THIS MOTION ON MAY 20, 2015 AT 9:00 A.M. IN THE COURTROOM OF THE HONORABLE RICHARD SCHMIDT, LOCATED AT 1701 WEST BUSINESS HWY 83, 9TH FLOOR, MCALLEN, TX 78501.**

Aziz Convenience Stores, L.L.C., Debtor and Debtor-in-Possession ("Debtor"), hereby submits this Emergency Motion, Pursuant to Bankruptcy Code Sections 105(a); 363; and 365, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of:  (I) an Order: (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; (C) Approving the Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief; and (II) An Order: (A) Approving Purchase Agreement; (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (C) Approving Form and Manner of Service of Notice of Sale Hearing; and (D) Granting Related Relief (the "Sale Motion").   In support of the Sale Motion, the Debtor respectfully represent as follows:

**JURISDICTION**

1.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2.      On August 4, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, McAllen Division (the "Court").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is managing its property as a debtor in possession.  No trustee or examiner has been appointed in this case.

3.      The Debtor operates 28 "Aziz Quick Stop" convenience stores in Hidalgo County, Texas (the "Stores") and employs more than 175 people in the Stores.  The Stores provide the

communities in which they are located with fuel, groceries and other conveniences.[1]  Although the fuel sold in the Stores is supplied to the Debtor by Valero, it is sold without a brand name, making the Debtor one of the largest "non-branded" convenience store chains in South Texas.

4.       The Debtor opened its first Store in 1984 and has expanded in the subsequent 30 years to its current size of 28 Stores.  The real property on which the Stores are located is primarily owned by the Debtor, although eight of the Stores are owned by related limited partnerships controlled by the Debtor's equity interest owners.

5.       The Debtor's expansion was financed through loans from local McAllen banks, including most recently by the First National Bank of Edinburgh ("FNB").  FNB provided the Debtor multiple loans totaling in excess of $27 million, which were secured primarily by the Stores, their contents and the Debtor's working capital.

6.       In 2013, FNB was closed by the FDIC and its assets sold.  The FNB loans to the Debtor were purchased by Plains Capital Bank ("Plains").  When the Debtor began having difficulty servicing its debt to Plains, it entered into a forbearance agreement with Plains that allowed it to skip payment on the Plains debt while it attempted to find new financing to pay the Plains debt.  Unfortunately, the Debtor was unable to reach a deal for the payoff of the Plains debt before the expiration of the forbearance agreement on July 31, 2014, and Plains posted the Stores for foreclosure on August 5, 2014.  In order to avoid the loss of its Stores and preserve the value of its business for its creditors, customers and employees, the Debtor sought chapter 11 protection on August 4, 2014 (the "Petition Date").

---

[1] In an effort to increase its business, the Debtor has implemented measures since the Petition Date to ensure its customers are well-served. For example, on November 5, 2014, the Court granted Debtor's Emergency Motion for an Order Authorizing the Debtor to Enter into an Automatic Teller Machine ("ATM") Agreement, enabling the Debtor to offer ATM services to its customers [Doc. no. 138].

## THE SALE PROCESS

7.      By this Motion, the Debtor seeks authority to sell substantially all of its assets (collectively, the "Assets"), which are defined and described in further detail in that Purchase and Sale Agreement ("PSA") by and between the Debtor and Susser Petroleum Property Company LLC (the "Proposed Purchaser").[2]  The Debtor believes that the procedures proposed herein with respect to the sale of the Assets (the "Sale") are the best way to maximize the value of these assets for the Debtor's estate for their creditors under the circumstances.

**A.      The Decision to Sell the Assets**

8.      Pursuant to the Stipulation and Agreed Final Order Authorizing the Debtor's Use of Cash Collateral ("Final Cash Collateral Order") [Docket # 181], the Debtor employed GA Keen Realty Advisors, LLC to market the Debtor's assets for sale or refinancing.  On January 29, 2015, the Court entered an order approving the assignment of GA Keen Realty Advisors, LLC's rights and obligations under its retention agreement with the Debtor to Keen Summit Capital Partners LLC ("Keen") [Doc. #202].  Through the process outlined in the Final Cash Collateral Order and through the retention of Keen, the Debtor identified the bid of the Proposed Purchaser, Susser Petroleum Property Company LLC, as the highest and best offer.

**B.      The Purchase and Sale Agreement**

9.      The Debtor has entered into the PSA with the Proposed Purchaser.  Pursuant to the PSA, the Proposed Purchaser proposes to acquire substantially all of the assets of the Debtor free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein or thereon to the maximum extent permitted by the Bankruptcy Code (collectively, the "Interests").  The Purchase Price (as defined in the PSA) is $28,000,000.00 plus an Inventory Payment (as defined in the PSA).

---

[2] A copy of the PSA is attached ere to as Exhibit A.

C.      **The Bidding Procedures**

10.      The Debtor proposes to conduct the Sale through a competitive bidding process described below (the "Proposed Sale Process") to ensure that the Debtor's estate realizes the maximum value for the Assets.  The Assets shall be sold in the aggregate to one or more purchasers, as may be determined by the Debtor in its business judgment.

11.      To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtor has developed and proposed bid procedures to govern the Sale (the "Bidding Procedures"), which are annexed as Exhibit 1 to the Bidding Procedures Order attached hereto as **Exhibit B** (the "Bidding Procedures Order").  The Bidding Procedures are designed to encourage all entities to put their best bids forward and to maximize the value of the Assets.

12.      The Debtor requests that this Court approve the Proposed Sale Process and the Bidding Procedures, the material terms of which are as follows:

***Provisions Governing Qualifications of Bidders and Bids**[3]*

-   Due Diligence.  Except as may be provided by an order of the Court, neither the Debtor nor any representative is obligated to furnish any information to any person other than a Potential Bidder.  If the Debtor provides any due diligence materials to a Potential Bidder, and such materials have not previously been provided to the other Potential Bidders, including the Proposed Purchaser, then the Debtor shall provide email notice of such posting to all Potential Bidders, including the Proposed Purchaser and make such materials reasonably available to the other Potential Bidders.  Notwithstanding anything herein to the contrary, the Debtor reserves the right to withhold information or restrict

---

[3] Capitalized terms used in this section of the Motion that are not defined in this Motion shall have the meaning given to them in the Bidding Procedures.

access to certain materials in any data room if providing such information or materials to a Potential Bidder will, in the Debtor's business judgment put the Debtor at a competitive disadvantage.

- <u>Bid Deadline</u>.  Unless otherwise agreed to in writing in advance by the Debtor, any Potential Bidder that desires to make a competing bid shall email or deliver written copies of its bid (inclusive of Good Faith Deposit) not later than **3:00 p.m. (CST) on July 15, 2015** (the "Bid Deadline") to Debtor's counsel: Okin & Adams LLP, 1113 Vine St., Suite 201, Houston, Texas 77002, ATTN: Matthew S. Okin (mokin@okinadams.com), with a copy to:  Keen-Summit Capital Partners LLC, 10 East 53rd Street, 28th Floor, New York, NY 10022, ATTN: Harold Bordwin (hbordwin@keen-summit.com) and Heather Milazzo (hmilazzo@keen-summit.com).

- <u>Bid Requirements</u>.  All competing bids must include (unless such requirement is waived by the Debtor) the following documents and requirements (the "Bid Requirements"):

    i.   an offer to purchase substantially all of the Assets (or an offer to purchase less than substantially all of the Assets or such other assets on terms that, in the Debtor's business judgment, are no less favorable than the terms and conditions set forth in the PSA) upon the terms and conditions as substantially set forth in the PSA, including without limitation, with respect to certainty and timing of closing, or upon alternative terms and conditions that the Debtor determines in its reasonable business judgment are no less favorable than the terms and conditions set forth in the PSA;

    ii.  a purchase price of at least $29,600,000 (which shall be the "Initial Incremental Bid Amount")[4];

    iii. a letter stating that the Potential Bidder's offer is irrevocable until two (2) business days after the Assets have been sold pursuant to the closing of the sale or sales approved by the Court;

---

[4] All Qualifying Bids must also unconditionally agree to pay the Inventory Payment (as defined in section 2.3(c) of the Purchase and Sale Agreement).  At its discretion, the Seller may choose not to accept a bid modifying the terms of the Inventory Payment or may require a higher Initial Incremental Bid Amount.

    iv.   a redline comparing the Potential Bidder's proposed purchase agreement against that of the PSA;

    v.   a good faith deposit in the amount of $1,480,000 (the "Good Faith Deposit") submitted to an escrow agent reasonably determined by the Debtor ("Escrow Agent") and a letter stating that the Debtor may retain (and the Escrow Agent may deliver to the Debtor) the Good Faith Deposit if the Potential Bidder is selected by the Debtor as the Successful Bidder or Back Up Bidder and thereafter there occurs a default by such Potential Bidder under such Potential Bidder's purchase agreement;

    vi.   must not be conditioned on financing contingencies or the outcome of due diligence by the Potential Bidder and must include an acknowledgement and representation as described herein that the Potential Bidder had an opportunity to conduct any and all required due diligence prior to making its bid;

    vii.   fully discloses the identity of each entity that will be bidding for all or any portion of the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation, including the identification of the Potential Bidder's principal advisors;

    viii.   written evidence of a commitment for financing or other evidence of ability to consummate the transaction.

- <u>Qualified Bid</u>. A bid received from a Potential Bidder by the Bid Deadline that satisfies all of the Bid Requirements shall be a "Qualified Bid," and at such time the Debtor, shall designate the Potential Bidder a qualified bidder ("Qualified Bidder"). The Debtor and its advisors shall have the exclusive right to determine whether any bid for the Assets is a Qualified Bid. The Proposed Purchaser is a Qualified Bidder, and the PSA is a Qualified Bid.

**<u>Notice Procedures</u>**

- <u>Notice of Auction and Sale Hearing</u>. After entry of the Bidding Procedures Order, the Debtor will cause a copy of the Bidding Procedures Order to be served by first-class mail, postage prepaid, facsimile, electronic transmission, or overnight mail upon: (i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Assets since the Petition Date, including all Qualified Bidders; (ii) all state and local

taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all insurers; (iv) all non-debtor parties to relevant contracts or leases (executory or otherwise); (v) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (vi) upon all parties set forth in the Debtor's Master Service List maintained in these cases (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (v) above).

- <u>Assumption and Assignment Notice</u>.  As soon as is practicable after entry of the Bidding Procedures Order, the Debtor will serve an Assumption and Assignment Notice (the "Assumption and Assignment Notice") by first class mail, facsimile, electronic transmission, or overnight mail on (a) each counterparty under each potential Assumed and Assigned Contract (as defined below) (a "Contract Counterparty") and (b) its attorney, if known, in each case, at the last known address available to the Debtor.  The Assumption and Assignment Notice shall set forth the following information: (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Successful Bidder(s); (ii) the name and address of the Contract Counterparty thereto; (iii) the amount, if any, determined by the Debtor to be necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount"); and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract, provided, however, that the presence of any contract or lease on an Assumption and Assignment Notice does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

**Auction**

- If more than one Qualified Bid has been received by the Debtor (including the PSA), the Debtor shall conduct an auction (the "Auction") with respect to the Assets. The Auction shall commence at 9:00 a.m. **(CST) on July 20, 2015** at the offices of offices of Atlas Hall & Rodriguez, LLP, 818 Pecan, McAllen, TX 78501.  The Debtor shall notify all Qualified Bidders that have submitted Qualified Bids of the time of the Auction.  The Auction shall be conducted in accordance with the following procedures:

  i. Only the Debtor, the Proposed Purchaser, and any Qualified Bidders (and the advisors to each of the foregoing) shall be entitled to attend the Auction and only the Proposed Purchaser and such Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction.

  ii. At the Auction, all Qualified Bidders shall be permitted to improve their Qualified Bids in accordance with the procedures set forth herein (each, a "Subsequent Bid").  All Subsequent Bids presented during the Auction shall be made and received in one room on an open basis. All participating Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each participating Qualified Bidder and shall be informed of the highest Subsequent Bid at the end of each round of bidding.

  iii. All Qualified Bidders at the Auction must have at least one individual representative with authority to bind such Qualified Bidder present in person at the Auction.

  iv. All proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

  v. At least one (1) day prior to the Auction, the Debtor will advise the Proposed Purchaser and all other Qualified Bidders which Qualified Bid the Debtor has determined in its reasonable business judgment constitutes the then highest or otherwise best offer for the Assets (the "Starting Bid").

  vi. Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round (a) at least one Subsequent Bid is submitted by a Qualified Bidder that improves upon such Qualified Bidder's immediately prior Qualified Bid and meets the overbid requirement set forth below, and (b) the Debtor determines, in its reasonable business judgment that a Subsequent Bid is a higher or otherwise better offer than the then current leading Qualified Bid.

9

vii. Bidding at the Auction shall be in increments of no less than $100,000 and shall continue until such time as the highest and best bid is determined by the Debtor in its reasonable business judgment. For the purpose of evaluating the value of the consideration provided by each bid (including any Subsequent Bid by the Proposed Purchaser) presented at the Auction, the Debtor may take into consideration, among other things, price, modifications to the PSA, closing risk, risk of delay, financial condition, experience, the mix of cash payable at closing verses other forms of consideration, whether the consideration is payable at the closing or over time, the financial and contractual terms as well as factors relevant to the sale process, including any issues affecting the speed and certainty of consummating the proposed sale or antitrust or unfair competition issues, and any other factors which the Debtor may consider.

viii. After each round of bidding, the Debtor shall announce the Qualified Bid or Subsequent Bid, as the case may be, that the Debtor has determined to be in its reasonable business judgment, to be the then highest or otherwise best bid (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has an opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. The Auction will continue until no other Qualifying Bidder wishes to increase its bid above the previous bid.

ix. At the conclusion of the Auction, the Debtor will announce the Qualified or Subsequent Bid which it has determined in its reasonable business judgment to be the highest or otherwise best bid (the "Successful Bid" and the entity or entities submitting such Successful Bid, the "Successful Bidder") and such Successful Bid will be submitted to the Court for approval at the Sale Hearing (defined below), along with which Qualified Bid or Subsequent Bid the Debtor has determined in its reasonable judgment to be the second highest and best Qualified Bid (the "Back-Up Bid").

x. Immediately prior to the adjournment of the Auction, the Successful Bidder, if it has not already done so, shall complete and sign all agreement(s), contract(s), instrument(s) or other document(s) evidencing and containing the terms and conditions upon which such bid was made.

- The Debtor shall file with the Court a notice of the Successful Bid (the "Supplement") by **12:00 p.m. (CST), July 22, 2015.** The Supplement may be obtained upon written request to Okin & Adams LLP, (Attn: Matthew S. Okin), counsel for the Debtor. The Supplement shall identify, among other things: (a) the Successful Bidder; (b) the bidder that presented the Back-Up Bid; (c) the consideration to be paid for the Assets; (d) the

executory contracts or leases to be assumed and assigned to the Successful Bidder in connection with the sale of the Assets; (e) the liabilities to be assumed by the Successful Bidder in connection with the sale of the Assets; and (f) copies of the respective purchase agreement entered into by the Successful Bidder and the Back-Up Bidder.

- <u>Proceeds</u>.  All valid and properly perfected liens against the Debtor's Assets shall attach to the proceeds of the Sale of such Assets.

## Sale Hearing

- <u>Sale Hearing</u>.  As soon as is practicable following the conclusion of the Auction, the Debtor will file the definitive purchase and sale agreement for the Successful Bid. The Debtor intends to present the Successful Bid(s) for approval by the Court pursuant to the provisions of Sections 105, 363(b), 363(f), 363(m), 363(n), and 365 of the Bankruptcy Code at the final hearing to approve the Motion (the "Sale Hearing") to be scheduled by the Court and requested to be held on or before Friday, July 31, 2015. The Debtor shall be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing. Upon the failure to consummate a Sale of the Assets after the Sale Hearing because of the occurrence of a breach or default by the Successful Bidder under the terms of the Successful Bid, the Backup Successful Bid shall be deemed the Successful Bid without further order of the Court, and the parties shall be authorized to consummate the transaction contemplated by the Backup Successful Bid.

- <u>Sale Implementation</u>.  Following the approval of the Successful Bid(s) at the Sale Hearing, the Debtor will be authorized to take any and all actions necessary and appropriate to facilitate the closing of the Sale (the "Closing") and implement the transactions contemplated by the Successful Bid(s).

**D.     Stalking Horse Bid Protections**

13.     The Proposed Purchaser has agreed to serve as the Stalking Horse Bidder and the PSA shall be considered the Stalking Horse Bid.  In order to provide a reasonable incentive to procure the Proposed Purchaser, the PSA provides the following:

a) In the event that the PSA is not the highest bid accepted by the Debtor then, and only then, the Stalking Horse Bidder shall be entitled to:

i) Return of any Good Faith Deposit tendered with the PSA;

ii) Payment by Debtor, as an administrative expense, of: (x) a Break-Up Fee in the amount of $840,000.00; and (y) the actual amount expended by the Stalking Horse Bidder in conducting activities of investigation and due diligence in connection with the presentation of its Bid and Asset Purchase Agreement. PROVIDED, however, that the amount of any such payment shall not exceed $500,000.00 (the "Due Diligence Reimbursement").

b) If the Stalking Horse Bid is not successful, then the unsuccessful Stalking Horse Bidder shall have ten (10) days in which to submit its statement(s) for Due Diligence Reimbursement to Okin & Adams LLP, 1113 Vine St., Suite 201, Houston, Texas 77002, ATTN: Matthew S. Okin (mokin@okinadams.com), (with copy to counsel for Plains) for payment out of sale proceeds.  The Debtor and Plains shall have 5 days to object to the Stalking Horse Due Diligence Reimbursement.  Any such objection must be made in writing and delivered to the Debtor and the Stalking Horse Bidder (with copy to counsel for Plains).  If no party timely objects to the Stalking Horse Due Diligence Reimbursement, the Debtor may pay the Stalking Horse Due Diligence Reimbursement and the Break-Up Fee.  If a party timely objects to the Stalking Horse Due Diligence

Reimbursement, the Stalking Horse Bidder shall have ten days in which to file a Motion with the Court for the purpose of determining allowance of the Due Diligence Reimbursement. Notwithstanding any other provision of this Motion, the Debtor shall retain 100% of the demanded Stalking Horse Due Diligence Reimbursement in escrow until the allowance of the reimbursement has been determined by the Court. The Debtor shall not be liable to any party for failure to pay any demanded Due Diligence Reimbursement except upon a showing of actual malice or bad faith.

**E.      Assumption and Assignment of Leases and Contracts**

14.      In addition, to facilitate the sale, assumption, and assignment of the leases and contracts to be assumed and assigned to the Successful Bidder(s) (the "Assumed and Assigned Contracts"), the Debtor proposes to serve the Assumption and Assignment Notice as soon as practicable after the entry of the Bidding Procedures Order and request that the Court approve the following procedures for fixing any cure amounts owed on the leases and contracts (the "Assumption and Assignment Procedures"). The Assumption and Assignment Notice shall set forth the following information: (i) the contract(s) and/or lease(s) that may be assumed by the Debtor and assigned to the Successful Bidder(s); (ii) the name and address of the Contract Counterparty thereto; (iii) the Cure Amount, if any, determined by the Debtor necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code; and (iv) the deadlines by which any such Contract Counterparty must file an objection to the proposed assumption and assignment of any Assumed and Assigned Contract.

15.      All objections to any assumption and assignment of any lease or contract, including without limitation any objection to the Debtor's proposed Cure Amount or the provision of adequate assurance of future performance under any lease or contract pursuant to

13

Section 365 of the Bankruptcy Code ("Adequate Assurance"), must: (a) comply with the General Objection Procedures (as defined in paragraph 20 below); (b) identify the lease or contract to which the objector is party; (c) describe with particularity any cure the claimant contends is required under Section 365 of the Bankruptcy Code (the "Cure Claim") and identify the basis(es) of the alleged Cure Claim under the contract or lease; (d) attach all documents supporting or evidencing the Cure Claim; and (e) if the response contains an objection to Adequate Assurance, state with specificity what the objecting party believes is required to provide Adequate Assurance (collectively with the General Objection Procedures, the "Assigned Contract Objection Procedures").

16.    If no objection is timely and properly filed and served in accordance with the Assigned Contract Objection Procedures, (a) the Cure Amount set forth in the Assumption and Assignment Notice shall be controlling notwithstanding anything to the contrary in any contract or lease or other document and the non-debtor party to the contract or lease shall be forever barred from asserting any other claim arising prior to the assignment against the Debtor or Successful Bidder as to such contract or lease if it is an Assumed and Assigned Contract, and (b) the Successful Bidder's promise to perform under the contract or lease shall be deemed Adequate Assurance under the contract or lease.  To the extent the Debtor dispute any Cure Claim, such dispute shall be presented to the Court at the Sale Hearing, or such earlier or later date and time as the Debtor and the objector may agree or the Court may order, but such dispute shall not affect in any way the effectiveness of any assumption and assignment of a contract or lease.  All Cure Amounts shall be paid by the Successful Bidder.

17.    While the Debtor has made a good faith effort to identify all contracts and leases to be assumed and assigned in connection with the Sale, they may discover additional contracts

14

and/or leases that the Debtor and the Successful Bidder desire to assume and assign in connection therewith. Accordingly, if at any time after the entry of the Bidding Procedures Order the Debtor identifies additional prepetition executory contracts and/or leases to be assumed and assigned to the Successful Bidder as Assumed and Assigned Contracts (whether before or after closing of any Sale(s) of relevant Assets), the Debtor shall serve a supplemental Assumption and Assignment Notice by first class mail, facsimile, electronic transmission, or overnight mail on the Contract Counterparty (and its attorney, if known) to each supplemental Assumed and Assigned Contract at the last known address available to the Debtor by no later than ten (10) days before the proposed effective date of the assignment. Each supplemental Assumption and Assignment Notice shall set forth the following information: (i) the name and address of the Contract Counterparty, (ii) notice of the proposed effective date of the assignment (subject to the right of the Debtor and Successful Bidder to withdraw such request for assumption and assignment of the Assumed and Assigned Contract prior to the Closing), (iii) identification of the Assumed and Assigned Contract, and (iv) the Cure Amount, if any.

18.     Unless the Contract Counterparty or any other entity properly files an objection to the supplemental Assumption and Assignment Notice in accordance with the General Objection Procedures (as defined below) within ten (10) days of the date of the Assumption and Assignment Notice, the Debtor may assume and assign the Assumed and Assigned Contract, subject to the occurrence of the Closing, without further order or notice of hearing. If an objection is filed and served in accordance with the General Objection Procedures within ten (10) days of the date of the supplemental Assumption and Assignment Notice, and the objection cannot be resolved consensually, then the Debtor will request that the Court schedule a hearing to consider the objection.

**F.     Notice**

19.     The Debtor proposes to give notice, immediately after the entry of the Bidding Procedures Order, of the Bidding Procedures, the PSA, the Assumption and Assignment Notice, the time and place of the Auction, the Sale Hearing, and the Objection Deadline to all entities known by the Debtor to have expressed an interest in a transaction with respect to the Assets during the pendency of this Chapter 11 case and upon all parties set forth in the Debtor's Master Service List maintained in these cases.  After entry of the Bidding Procedures Order, the Debtor will cause the Bidding Procedures Order to be served by first-class mail, postage prepaid, facsimile, electronic transmission, or overnight mail upon: (i) all entities known by the Debtor to have expressed an interest in a transaction with respect to the Assets since the Petition Date, including all Qualified Bidders; (ii) all state and local taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iii) all non-debtor parties to relevant contracts or leases (executory or otherwise); (iv) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (v) upon all parties set forth in the Debtor's Master Service List maintained in these cases (to the extent any party to receive notice thereby has not received notice pursuant to sections (i) through (iv) above).

**G.     Objections**

20.     All objections to the Sale of the Assets, the assumption and assignment of the Assumed and Assigned Contracts, or any relief requested in the Motion other than the relief granted by this Court in the Bidding Procedures Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules of the Court; (d) filed with the Bankruptcy Court, by no later than 5:00 p.m. (Central

Time) on Friday, June 5, 2015 (the "General Objection Deadline"); provided, however, that any

party may object based on events occurring at the Auction until 3:00 p.m. (Central Time) on the

day prior to the Sale Hearing; and (e) served in accordance with the Local Rules so as to be

received on or before the relevant objection deadline by the following (collectively, the

"Objection Notice Parties"):

**Counsel for the Debtor:**

Okin & Adams LLP
1113 Vine St., Suite 201
Houston, Texas 77002
ATTN: Matthew S. Okin
mokin@okinadams.com

**Counsel for the Proposed Purchaser:**

Patricia Reed Constant
One Shoreline Plaza
800 N. Shoreline Blvd., Suite 320 S
Corpus Christi, TX.  78401-3733
prc@prconstantlaw.com

**Counsel for PlainsCapital Bank:**

Gardere Wynne
1601 Elm St., Ste. 300
Dallas, TX 75201
ATTN: Marcus Helt
mhelt@gardere.com

and

Atlas, Hall & Rodriguez, LLP
P.O. Box 3725
McAllen, TX 78502-3725
ATTN: Vickie Skaggs
vmskaggs@atlashall.com

**Counsel for the United States Trustee:**

Office of the U.S. Trustee
606 N. Carancahua, suite 1107
Corpus Christi, TX 78401
ATTN: Barbara C. Jue
barbara.c.jue@usdoj.gov

These procedures are collectively referred to as the "General Objection Procedures."   Each

objection shall state the legal and factual basis of such objection and may be orally supplemented

at the relevant hearing.

## RELIEF REQUESTED

21.     By this Motion, the Debtor requests the entry of two orders concerning sales of

the Assets.  First, to provide for the orderly sale of the Assets, the Debtor seeks the immediate

entry of the Bidding Procedures Order approving the Bidding Procedures summarized above.

This relief requested by the Debtor is intended to provide for a competitive bidding and auction procedure for the Assets to maximize value for their estates, creditors and other stakeholders as expeditiously as possible.

22.     Following the entry of the Bidding Procedures Order, the Debtor will solicit Bids according to the Bidding Procedures in hopes of receiving acceptable offers for the Assets.  In the event that more than one Qualified Bid is received prior to the Bid Deadline, the Debtor will hold an Auction at which they will choose the Successful Bidder(s) with the highest and best Bid(s) for the Assets.

23.     Following the Bid Deadline and after the Auction, if any, the Debtor will request the entry of an order to be negotiated with the Successful Bidder and filed with the Court two (2) days prior to the Sale Hearing (the "Sale Order") approving the Sale or Sales of the Assets free and clear of (i) all Liens (as defined in the PSA) relating to, accruing, or arising any time prior to the Closing Date, including, without limitation, any such Liens (x) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase, or repurchase right or option, or termination of, the Debtor's or the Successful Bidder's interests in the Assets (as such terms are defined in the Sale Order), or any similar rights, or (y) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (with such Liens attaching to the proceeds of the sale or sales) and (ii) all debts arising under, relating to, or in connection with any act of the Debtor or claims (as that term is defined in Section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and

nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise relating to, accruing or arising any time prior to the Closing Date (collectively in this clause (ii), the "Claims" and together with the Liens, the "Claims and Interests"), with the exception of any Assumed Obligations, as defined in the PSA, to the Successful Bidder(s) and (b) authorizing the Debtor to assume and assign the Assumed and Assigned Contracts.

## A. The Bidding Procedures Are Appropriate Under the Circumstances

24. A debtor may sell, after notice and a hearing, its assets outside the ordinary course of business. 11 U.S.C. § 363. Generally, to obtain approval of a proposed sale of assets, a debtor must demonstrate that the "proffered purchase price is the highest and best offer" under the circumstances of the case. *See, e.g., Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (holding that in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated Res.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . . Debtor's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *Cello Bay Co. v. Champion Int'l Corn. (In re Atlanta Packaging Prods., Inc.)*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988)).

25. The implementation of competitive bidding procedures to facilitate the sale of a debtor's assets outside of the ordinary course of a debtor's business is routinely approved by bankruptcy courts as a means of ensuring that such sale will generate the highest and best return for a debtor's estate. The Debtor submits that the foregoing Bidding Procedures and the opportunity for competitive bidding embodied therein are reasonable and designed to maximize the value of the Assets and should, therefore, be approved by this Court.

26.     The Debtor, through Keen, marketed their Assets for a possible sale extensively and is well positioned to conduct an auction of their Assets on the timetable set forth herein.  The Debtor believes that the value of the Assets and, therefore, the consummation of the Sale or any alternative transaction, will be seriously jeopardized unless they can begin the Proposed Sale Process contemplated herein as expeditiously as possible.

27.     Accordingly, in the exercise of their reasonable business judgment, the Debtor have concluded that: (a) a prompt sale of the Assets is the best way to maximize value for their estates, and (b) the proposed Bidding Procedures described herein are the most effective method of obtaining the highest and best offer for the Assets.

**B.      Sale of the Assets is an Exercise of the Debtor's Reasonable Business Judgment**

28.     Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Section 105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

29.     Courts have held that approval of a proposed sale of substantially all of the assets of a debtor under Section 363 of the Bankruptcy Code outside the ordinary course of business and prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession.  *See In re Abbotts Dairies of Pa.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (holding that the following non- exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of

elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value."); *In re Stroud Ford, Inc.*, 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); *In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983); *Stephens Indus., Inc. v. McClung, 789 F.2d 386, 391 (6th Cir. 1986); In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

30.     The "sound business reason" test requires a trustee or debtor-in-possession to establish four elements: (1) that a sound business purpose justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee has obtained a fair and reasonable price; and (4) good faith.  *In re Titusville Country Club*, 128 B.R. at 399; *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); *Phoenix Steel Corp.*, 82 B.R. at 335-36; *see also Stephens Indus.*, 789 F.2d at 390; In re Lionel Corp., 722 F.2d at 1071.

31.     Additionally, prior to and after enactment of the Bankruptcy Code, courts have permitted a proposed sale of all or substantially all assets of a debtor outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders.  *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 143; *In re Lionel Corp.*, 722

F.2d at 1063 (passim); *In re Equity Funding Corp. of America*, 492 F.2d 793, 794 (9th Cir. 1974) ("Other circuits have recognized the power of the bankruptcy court under Chapter X to authorize a sale of the Debtor's property under less than emergency conditions where such sale is necessary to avoid deterioration in the value of the assets").

32.     The proposed procedures for sales of the Debtor's assets meet the "sound business reason" test.  First, sound business purposes justify the Sale.  The Debtor believes that a prompt sale of the Assets by auction presents the best opportunity to realize the maximum value of the estates' assets for distribution to creditors and is required under the terms of the Agreed Cash Collateral Order.

33.     The proposed procedures for Sale(s) of the Assets also meet the other factors of the "sound business reason" test.  As part of this Motion, the Debtor has sought to establish procedures for notice to creditors, other prospective bidders, and other parties in interest.  Under the circumstances of these cases, particularly the Debtor's extensive marketing process, the Debtor submits that the notice period proposed satisfies the requirements of the Bankruptcy Rules, including Bankruptcy Rule 2002, and provides sufficient time for parties in interest to submit objections to the proposed sale and for bidders to formulate and submit competing proposals.

34.     Finally, the Debtor submits that the results of the Auction will be the product of good faith, arm's length negotiations with respect to the price and other terms of the sales of the Assets between the Debtor and highest and best bidder at the conclusion of the Auction.

35.     As set forth above, the Debtor has determined, in the exercise of its sound business judgment, that the Sale of the Assets to the highest and best bidder at the Auction is appropriate and in the best interests of their estates and creditors.  The Sale of the Assets at the

Auction will afford the Debtor's estates an opportunity to maximize the recoveries to creditors. Accordingly, the Debtor requests that the Court approve the proposed procedures for sales of the Assets to the highest or otherwise best bidder at the Auction and approve the Sale presented to the Court at the Sale Hearing.

**C.     The Stalking-Horse Break-Up Should Be Approved**

36.     Bidding incentives, such as the Break-up Fee, which includes expense reimbursement, encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the Chapter 11 process. "Agreements to provide breakup fees or reimbursement of expenses are meant to compensate the potential acquirer who serves as catalyst or 'stalking horse' which attracts more favorable offers." *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); *Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (such fees are "important tools to encourage bidding and to maximize the value of the debtor's assets.")

37.     Where a debtor seeks prior bankruptcy court approval of bid protections, such as the Break-Up fee, the applicable standard is the business judgment rule set forth in § 363(b) of the Bankruptcy Code.  *See In re ASARCO LLC*, 441 B.R. 813, 829 (S.D. Tex. 2010) (affirming bankruptcy court's pre-approval of proposed expense reimbursement).  Here, the Proposed Purchaser has required the Break-Up Fee as an integral term of the PSA and the Debtor, exercising its sounds business judgment, has determined that the overall benefit to the estate derived from entering into the PSA justifies agreement to such terms.

**D.      The Successful Bidder Should Be Granted the Protections of Bankruptcy Code Section 363(m)**

38.      As will be set forth in further detail at the Sale Hearing, the Debtor also maintains that a Successful Bidder should be entitled to the protections afforded by Bankruptcy Code Section 363(m).

39.      Specifically, Bankruptcy Code Section 363(m) provides that:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

40.      While the Bankruptcy Code does not define "good faith," "[t]he requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted*); see generally Marin v. Coated Sales, Inc., (In re Coated Sales, Inc.)*, Case No. 89-3704 (KMW), 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that a party, to show lack of good faith, must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining facts of each case, concentrating on "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

41.     As the Debtor will demonstrate at the Sale Hearing, any Successful Bidder shall have negotiated and dealt with the Debtor at arm's length. Under these circumstances, this Court should find in the order approving the sale of the Assets that Successful Bidder is entitled to all of the protections of Bankruptcy Code Section 363(m).

**E.      The PSA is Not the Result of Collusive Bidding Under Bankruptcy Code Section 363(n)**

42.     As set forth above, the Debtor will select the Successful Bidder for the Sale of the Assets at arm's length and in good faith.  Moreover, the Debtor do not believe that any such sale will be the result of collusion or other bad faith between bidders or that the sale price under a definitive purchase and sale agreement of a Successful Bidder will be controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code Section 363(n).

43.     As the Debtor will demonstrate at the Sale Hearing, the PSA or a definitive purchase and sale agreement of a Successful Bidder will be negotiated, proposed, and entered into by the Debtor and the Proposed Purchaser or such Successful Bidder, as applicable, without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtor nor the Proposed Purchaser or a Successful Bidder will have engaged in any conduct that would cause or permit the PSA or a definitive purchase and sale agreement of a Successful Bidder, as applicable, to be avoided under Bankruptcy Code Section 363(n).

**F.      The Sale of Assets Should Be Free and Clear of Liens, Claims, and Interests**

44.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor seeks authority to sell and transfer the Assets to all Successful Bidders free and clear of all Claims and Interests, with such Claims and Interests to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of the Debtor and other parties in interest with respect thereto.  Section 363(f) of the Bankruptcy Code provides, in pertinent part:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  *See also In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that because Section 363(f) is written in the disjunctive, a court may approve a sale "free and clear" if at least one of the requirements is met).

45.     A sale free and clear of all Claims and Interests is necessary to maximize the value of the Assets.  A sale subject to Claims and Interests would result in a lower purchase price and be of substantially less benefit to the Debtor's estates.  A sale free and clear of Liens is particularly appropriate under the circumstances because any Lien in, to or against the Assets that exists immediately prior to the closing of any sales will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest.  The Debtor submits that holders of Liens will be adequately protected by the availability of the proceeds of the Sale to satisfy their Liens.  Thus, the proposed Sale satisfies Sections 363(f) of the Bankruptcy Code.  Moreover, any holder of a Claim or Interest that receives notice of the Sale and which fails to object to the Sale of the Assets free and clear of Claims and Interests should be deemed to consent to the Sale, thereby complying with Section 363(f)(2) of the Bankruptcy Code.

**G.      The Proposed Notice of Sale is Reasonable Under the Circumstances**

46.      In order to receive the highest and best price in return for the Assets under the circumstances, the Debtor has filed this Motion seeking to conduct the Auction.  The Debtor continues to incur costs associated with preserving the value of the Assets.  In order to yield the greatest possible return for the benefit of creditors and to minimize potential administrative expenses, the Debtor believes that the proposed timing of the Auction and Proposed Sale Process is not only reasonable, but is warranted and necessary in light of the terms of the Agreed Cash Collateral Order.

47.      Accordingly, the Debtor submits that the notice to be provided is reasonable and appropriate and will be adequate to ensure that all interested parties have the opportunity to bid for the Assets and/or to object to the proposed Sale of the Assets.

**H.      The Assumption and Assignment of Executory Contracts Should Be Authorized**

48.      Under Bankruptcy Code Section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Bankruptcy Code Section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor.  This subsection provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if --
>
> > (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

49.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)*, 139 B.R. 585, 593 (S.D.N.Y. 1992).

50.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to the business to give it a strong likelihood of succeeding).

51.     To the extent any defaults exist under any Assumed and Assigned Contracts, any such default will be promptly cured or adequate assurance that such default will be cured will be provided prior to the assumption and assignment as set forth in this Motion.  If necessary, the Debtor will submit facts prior to or at the Sale Hearing to show the financial capability of the Successful Bidder and willingness and ability to perform under the Assumed and Assigned Contracts.  The Sale Hearing will therefore provide the Court and other interested parties the

28

opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder to provide adequate assurance of future performance under the Assumed and Assigned Contracts, as required under Section 365(b)(1)(C) of the Bankruptcy Code.

52.     In addition, the Debtor submits that it is an exercise of its sound business judgment to assume and assign the Assumed and Assigned Contracts to the Successful Bidder in connection with the consummation of the Sale, and the assumption, assignment, and sale of Assumed and Assigned Contracts is in the best interests of the Debtor, their estates, their creditors, and all parties in interest.  The Assumed and Assigned Contracts being assigned to the Successful Bidder are an integral part of the Assets being purchased by Successful Bidder, and accordingly, such assumption, assignment, and sale of Assumed and Assigned Contracts are reasonable and enhance the value of the Debtor's estates.  The Court should therefore authorize the Debtor to assume and assign the Assumed and Assigned Contracts as set forth herein.

## I.     Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)

53.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to Section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts or unexpired leases are automatically stayed for fourteen (14) days after entry of the order.  The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. *See* ADVISORY COMMITTEE NOTES TO FED. R. BANKR. P. 6004(h); ADVISORY COMMITTEE NOTES TO FED. R. BANKR. P. 6006(d).

54.     Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. See generally 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

55.     Given the terms of the Agreed Cash Collateral Order, the Debtor must close this sale promptly after all closing conditions have been met or waived.  Thus, waiver of any applicable stays is appropriate in this circumstance.

WHEREFORE, the Debtor respectfully request that this Court (i) enter an order substantially in the form of the Bidding Procedures Order attached hereto as Exhibit B: (a) authorizing and approving the Bidding Procedures attached as Exhibit 1 thereto; (b) approving the form and manner of the Sale Notice; (c) scheduling the Auction and Sale Hearing; (d) approving the Assumption and Assignment Procedures; and (e) granting such other and further relief as it deems just and proper; and (ii) at the conclusion of the Sale Hearing, enter an order (or orders): (a) approving the Sale(s) of all or substantially all of the Assets free and clear of all liens, encumbrances, claims and other interests pursuant to one or more Qualified PSAs; (b) authorizing the assumption and assignment of any Assumed and Assigned Contracts; and (c) granting such other and further relief as it deems just and proper.

Dated:  May 5, 2015

**OKIN ADAMS & KILMER LLP**

By:      /s/ *Matthew S. Okin*
     Matthew S. Okin
     Texas Bar No. 00784695
     Email: mokin@okinadams.com
     David L. Curry, Jr.
     Texas  Bar No. 24065107
     Email: dcurry@okinadams.com
     1113 Vine St. Suite 201
     Houston, TX  77002
     Tel: (713) 228-4100
     Fax: (888) 865-2118

**ATTORNEYS   FOR   THE   DEBTOR   AND
DEBTOR-IN-POSSESSION**