IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 14-70427 |
| **AZIZ CONVENIENCE STORES, L.L.C.,** | § | |
| | § | Chapter 11 |
| Debtor. | § | |

### EMERGENCY MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN **21 DAYS** OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

Aziz Convenience Stores, L.L.C. ("*Debtor*" or "*Company*"), as debtor and debtor-in-possession in the above-captioned case, hereby files its *Motion for Approval of Compromise and Settlement Pursuant to Bankruptcy Rule 9019* (the "*Motion*").  In support of the Motion, the Debtor respectfully states as follows:

# I.
# JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter concerns administration of the Estate; accordingly, this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 6004(h) and 9019.

# II.
# BACKGROUND

2. The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 5, 2014 (the "**Petition Date**"), creating this bankruptcy case (the "**Case**" or "**case**") and the Debtor's bankruptcy estate (the "**Estate**") under § 541 of the Bankruptcy Code.

3. Pursuant to the Debtor's prepetition lending relationship with PlainsCapital Bank ("**PCB**"), the Debtor owed PCB at least $27,601,798.07 on the Petition Date (the "**PCB Debt**"). The Debtor agrees that the PCB Debt is a fully enforceable obligation of the Debtor, and is not subject to any defense or setoff, counterclaim, or diminution of any type, kind, or nature whatsoever.

4. On December 14, 2014, this Court entered the *Stipulation and Agreed Final Order Authorizing the Debtor's Use of Cash Collateral* [Docket No. 181] (as later extended) (the "**Cash Collateral Order**"). Through the Cash Collateral Order, among other things, the Debtor received authority to use PCB's cash collateral during the pendency of this Case.

## III.
## SUMMARY OF TERMS OF THE
## PROPOSED SETTLEMENT AND COMPROMISE

5. (a) Aziz Convenience Stores, L.L.C. (the "***Company***" or "***Debtor***"); (b) Dagoberto Trevino and Silvia Trevino, individually, and as partners in DST Family Limited Partnership (collectively, the "***Trevinos***"), (c) (i) Aziz Convenience Stores No. 4 L.P., (ii) Aziz Convenience Stores No. 5 L.P., (iii) Aziz Convenience Stores No. 6 L.P., (iv) Aziz Convenience Stores No. 8 L.P., (v) Aziz Convenience Stores No. 9 L.P., (vi) Aziz Convenience Stores No. 10 L.P., (vii) Aziz Convenience Stores No. 12 L.P., and (viii) Aziz Convenience Stores No. 15 L.P. (collectively, the "***Limited Partnerships***"), (d) DST Management Services, LLC and DST Family Limited Partnership (collectively, the "***DST Parties***," together with the Debtor, the Trevinos, and the Limited Partnerships shall be referred to as the "***Aziz Parties***"); and (e) PCB (The Aziz Parties and PCB shall be collectively the "***Parties***" and each individually a "***Party***") have engaged in good-faith, arms-length settlement negotiations to avoid the costs, expenses, risks, uncertainties, and burdens and delays related to potential litigation regarding (a) distribution of the proceeds of the sale(s) of substantially all of the Debtor's assets[1] and (b) and all other issues and disputes existing as of entry of the order approving this Motion between the Aziz Parties, on one hand, and PCB, on the other hand (collectively, the "***Disputes***"). Subject to the Bankruptcy Court's approval, the Parties have agreed to a compromise and settlement of the Disputes on the terms and conditions described in the *Settlement Agreement and Release* attached hereto as <u>Exhibit A</u> (the "***Agreement***").

---

[1] On May 5, 2015, the Debtor filed its Emergency Motion, Pursuant to Bankruptcy Code Sections 105(a); 363; and 365, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of: (I) an Order: (A) Approving Auction and Bidding Procedures; (B) Scheduling Auction and Sale Hearing; (C) Approving the Form and Manner of Service of Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief; and (II) An Order: (A) Approving Purchase Agreement; (B) Authorizing Sale Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (C) Approving Form and Manner of Service of Notice of Sale Hearing; and (D) Granting Related Relief [Docket No. 283] (the "Sale Motion") seeking Bankruptcy Court approval of, among other things, the sale of substantially all of the Debtor's assets.

6. As a result of those negotiations, and to avoid the expense, inconvenience, delay, risks, and uncertainty related to the Disputes, the Parties have agreed to fully and completely resolve the Disputes pursuant to the Agreement (the "***Proposed Settlement***"). In general, the Proposed Settlement is summarized as follows:

a. <u>Best Efforts</u>. The Aziz Parties shall use their best efforts to (a) maximize the value of the Debtor and its operations, (b) market substantially all of their assets (including the assets to be conveyed by the Limited Partnerships pursuant to this Agreement), and (b) sell substantially all of their assets to the highest and/or best offeror pursuant to the Sale Motion, including, without limitation, cooperating with the Chief Restructuring Officer and executing all documents necessary to effectuate the proposed sale(s) and to effectuate and maintain the corporate-governance authority described below.

b. <u>Conveyance of Property by the non-Debtor Aziz Parties to the Debtor</u>. Execution of this Agreement by the non-Debtor Aziz Parties operates as their (a) disclaimer of all rights, title, and interest in and to the assets contemplated to be sold in the Sale Documents and (b) assignment, transfer, and/or conveyance of such assets to the Debtor. Non-Debtor Aziz Parties agree to provide and execute all other documents necessary to effectuate such assignment, transfer, or conveyance by May 18, 2015, or such other time as agreed to in writing by PCB.

c. <u>Corporate Authority of the Debtor</u>. Doug Brickley and The Claro Group, if Doug Brickley is unavailable, shall have (a) general supervision of the affairs of the Debtor and (b) general and active control of all its business and the authority to take any action on the Debtor's behalf, including to (i) execute any and all instruments and contracts in the name of the Debtor; (ii) transact on the Debtor's behalf, including to be added as a signatory on the Debtor's bank accounts, to open bank accounts in the Debtor's name, and to add/remove authorized signatories on any of the Debtor's bank accounts; (iii) convey, assign, sell, or transfer title to all or any of the Debtor's assets (including those assets conveyed to the Debtor by the Limited Partnerships pursuant to this Agreement); (iv) cause the employment or appointment of such employees and agents of the Debtor as the proper conduct of operations may require, and to fix their compensation; (v) remove or suspend any officer, employee, or agent of the Debtor; and (vi) in general, to exercise all the powers and authority usually pertaining to

the chief executive officer of a corporate entity, limited liability company, or partnership, in each case, subject to (if required) approval by the Bankruptcy Court.

d. <u>PCB's Allowed Prepetition Secured Claim</u>: On the Effective Date, PCB shall have an allowed, secured claim for all purposes in the Debtor's Bankruptcy Case, based on the PCB Debt, in an amount not to exceed $27,601,798.07 (the "***PCB Allowed Prepetition Secured Claim***"). PCB shall not be allowed any further claim(s) or amount(s) against the Debtor or the Debtor's Estate.

e. <u>Payment of the PCB Debt</u>. Pursuant to the schedules attached as **Exhibit 1** to the Agreement (the "*Waterfall*")the PCB Allowed Prepetition Secured Claim will be from (a) the proceeds of the Sale(s) (after the Sale is approved by the Bankruptcy Court) pursuant to the waterfall attached and (b) if such proceeds are not sufficient to pay the PCB Allowed Prepetition Secured Claim in full, then from Cash Collateral (as defined in the Cash Collateral Order) remaining after payment of all budgeted, unpaid, and accrued administrative expenses. As used in the Waterfall, "*Net Sale Proceeds*" means proceeds from the Sale(s) less (a) commissions/fees due to Keen Summit Capital Partners LLC (b) usual and customary closing costs paid by seller, as approved by the Bankruptcy Court, (c) accrued and unpaid *ad valorem* taxes for 2014 and the Debtor's *pro rata* share of 2015 *ad valorem* taxes, plus Cash Collateral Proceeds. All escrowed *ad-valorem* tax amounts are Cash Collateral Proceeds and shall be delivered by the Company at closing of the Sale. Payment of the PCB Allowed Prepetition Secured Claim shall be made no later than five (5) days after consummation of the Sale (or each Sale, as the case may be) or in the case of Cash Collateral Proceeds, at the time of payment of other claims pursuant to any chapter 11 plan or chapter 7 distribution; and shall be in full and final satisfaction of all claims by PCB against the estates, including the PCB Allowed Prepetition Secured Claim.

f. <u>Release of PCB</u>. On the Effective Date, in consideration for the promises and releases contained herein, the Estate and Aziz Parties and on behalf of their respective affiliates, agents, representatives, heirs, attorneys, successors, and assigns (collectively, the "*Aziz Releasing Parties*") hereby, jointly and severally, fully and completely release, acquit, and forever discharge PCB and its affiliates, subsidiaries, parents, agents, representatives, heirs, attorneys, successors and assigns (the "*PCB Released Parties*") of and from any and all claims,

5

        demands, defenses, actions, causes of action, covenants, suits, obligations, costs, expenses, sums of money, damages, and liabilities whatsoever and of any nature and kind occurring or arising prior to the Effective Date, whether arising at law or in equity, presently possessed, known or unknown, direct or indirect, liquidated or unliquidated, presently accrued, absolute or contingent, foreseen or unforeseen, and whether or not heretofore asserted, that any of the Aziz Releasing Parties has or may have against any of the PCB Released Parties.

    g. <u>Covenant Not To Sue</u>. The Aziz Releasing Parties promise not to sue or proceed in any manner against the PCB Released Parties, in agency or other proceedings, whether at law, in equity, by way of administrative hearing, or otherwise, to solicit others to institute any such actions or proceedings, or consent to be a complainant in any criminal action or proceeding, against the other party and its respective heirs, legal representatives, officers, directors, employees, agents, successors and assigns, because of or arising out of the event or transaction arising or occurring prior to the Effective Date.

    h. <u>Representations and Warranties</u>. Numerous.

    i. <u>Termination</u>. Numerous termination events or conditions.

    j. <u>Retention of Liens</u>. Nothing in this Agreement or any document contemplated by this Agreement or related to this Agreement shall impair or affect any liens of PCB in any asset.

7.    The discussion contained herein is only intended to summarize the Proposed Settlement and is qualified, in its entirety, by the Agreement. To the extent that the description of any term contained in this Motion conflicts with the Agreement, the Agreement shall control. All creditors, equity security interest holders, and parties in interest are directed to read the Agreement for the full and complete terms of the Proposed Settlement.

## IV.
## RELIEF REQUESTED

8.    Pursuant to this Motion, and in accordance with Bankruptcy Rule 9019(a), the Debtor respectfully requests that the Court enter an order (a) approving the Proposed Settlement and the Agreement, (b) authorizing the Debtor to take any and all actions necessary to effectuate

the Proposed Settlement and the transaction contemplated in the Agreement, and (c) waiving any stay imposed by Bankruptcy Rule 6004(h) or otherwise.

## V.
## AUTHORITY AND ANALYSIS

9. This Court has the right and the power to approve the Proposed Settlement. *See* 11 U.S.C. § 105; FED. R. BANKR. P. 9019. Bankruptcy Rule 9019(a) provides, in pertinent part, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). Section 105(a) of the Bankruptcy Code further provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.

10. The Debtor believes that the Proposed Settlement is in the best interests of the Estate and the creditors thereof under the circumstances; thus, it should be approved. Settlements and compromises are a "normal part of the process of reorganization." *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939). The Supreme Court of the United States has further said: "[i]n administering [Bankruptcy] Proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims as to which there are substantially and reasonable doubts." *Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson (In re TMT Trailer Ferry, Inc.)*, 390 U.S. 414, 424 (1968), on remand, *TMT Trailer Ferry, Inc. v. Kirkland*, 471 F.2d 10 (5th Cir. 1972). Settlements are "desirable and wise

methods of bringing [closure] to . . . proceedings otherwise lengthy, complicated and costly." *Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

11. Under Bankruptcy Rule 9019(a), this Court may approve a compromise or settlement "on motion by the trustee and after a hearing on notice to creditors, the debtor and indenture trustee . . . ." *Protective Comm. For Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). "In conducting a hearing under Rule 9019(a), the bankruptcy court is to determine whether the proposed compromise is fair and equitable, and in the best interests of the bankruptcy estate." *Id.* In making this determination, a bankruptcy court is required to apprise itself "of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Id.* To determine whether a settlement should be approved under 9019, the Court should:

> form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.

*Id.* at 424-25.

12. The decision whether to approve a particular settlement within the discretion of the bankruptcy court. "It must be remembered that the evaluation of any lawsuit is quite problematic and calls for a significant degree of speculation." *Texas Extrusion Corp. v Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1159 (5th Cir. 1988). A reviewing court will uphold the approval of a settlement if it is the result of "an adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by delay, and the fairness of the terms of the settlement." *TMT Trailer Ferry, Inc.*, 390 U.S. at 434.

13. The Fifth Circuit has adopted the following factors to consider in evaluating the propriety of a proposed settlement or compromise:

    a. The probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    b. the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

    c. all other factors bearing on the wisdom of the compromise.

*Matter of Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

14. <u>Probability of Success on the Merits</u>. The Debtor is not currently aware of any claims or causes of action that may be asserted against PCB. Accordingly, "probability of success on the merits" is not quantifiable at this time. However, the Debtor is avoiding the potential for a dispute regarding the Sale and/or the distribution of the proceeds thereof. Further, in exchange for the release to be provided by the Debtor, PCB is agreeing to cap its PCB Allowed Prepetition Secured Claim, without asserting a claim for post-petition amounts, and agreeing that a portion any Sale proceeds will be available to the Estate even if the total sale proceeds are less than PCB Allowed Prepetition Secured Claim.

15. <u>Complexity, Expense, and Likely Duration of the Litigation</u>. Although the Debtor is not currently aware of any potential claims against PCB, potential litigation of the matters subject to the Proposed Settlement could be quite lengthy; delaying resolution of this chapter 11 case and increasing administrative expense. Such a delay and additional administrative expense would be burdensome on the Estate. Further, prosecution of each Party's claims and defenses would require substantial additional litigation expenses. The Estate, for example, would likely need incur litigation expenses, including but not limited to the employment of expert witnesses, depositions, pretrial-motion and brief preparation, and preparation for and participation in one or

9

more lengthy trials and appeals.  The Debtor has evaluated these factors in reaching its decision to enter into the Proposed Settlement.

16. <u>Other Facts and Circumstances Bearing on the Wisdom of the Proposed Settlement</u>.  The Debtor asserts that the Proposed Settlement is in the best interest of the Estate and the Debtor's creditors in that such settlement avoids potentially costly litigation, while providing funds to the Estate that may not otherwise be available for distribution to creditors other than PCB.  Absent the Proposed Settlement, the amount of money available for such creditor distributions would be speculative and largely dependent upon the cost of and success in litigating the Disputes.  The Proposed Settlement, however, will provide the Estate certainty necessary to fully administer the Estate and potentially provides funds enabling a partial recovery to creditors subordinate to PCB – even if the total sale proceeds are less than PCB Allowed Prepetition Secured Claim.  Finally, the Proposed Settlement is the result of arms-length, good-faith, and extensive negotiations among the Parties.  Accordingly, the Debtor believes that the Proposed Settlement is in the best interests of the Estate under the circumstances and serves the "paramount interests" of the creditors.

## VI.
## EMERGENCY CONSIDERATION

17. The Debtor has proposed to sell substantially all of its assets pursuant to the terms and procedures set forth in the Sale Motion.  The terms of this Motion, and the Proposed Settlement set forth herein and in the Agreement, while not directly related to the Sale, will impact the Debtor's ability to properly evaluate proposed bids.  Further, PCB has required that the Proposed Settlement shall terminate if an order approving the Proposed Settlement is not entered by June 15, 2015.  Accordingly, the Debtor respectfully requests that this matter be set for a hearing as soon as is practicable in order to ensure consummation of the agreement.

WHEREFORE the Debtor requests that the Court enter an order (i) approving the Proposed Settlement as described herein and in the Agreement, (ii) approving the Agreement, (iii) authorizing the Debtor to take any and all actions necessary to effectuate the Proposed Settlement, (iv) granting PCB an allowed secured claim in an amount not more than $27,601,798.07, (v) providing that PCB shall not be allowed any further claim(s) or amount(s) against the Debtor or the Debtor's Estate, (vi) waiving any stay imposed by Bankruptcy Rule 6004(h) or otherwise, and (vii) granting the Debtor such other legal or equitable relief as the Court may deem just and proper.

Respectfully submitted on the 19th day of May, 2015.

**OKIN & ADAMS LLP**

By: */s/ Matthew S. Okin*
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
George Niño
Texas Bar No. 00786456
Email: gnino@okinadams.com
David L. Curry, Jr.
Texas Bar No. 24065107
Email: dcurry@okinadams.com
1113 Vine St. Suite 201
Houston, TX 77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013-1(I)

I hereby certify to the accuracy of the matters set forth in the foregoing motion.

*/s/ Matthew S. Okin*
Matthew S. Okin